Best case this afternoon is case number 4-16-0536, People v. Edward Lafontaine. Counsel, could you state your appearances, please? Mr. Majors? Thank you. Ms. Fangman, you may proceed. May it please the Court? Counsel? I am Jessica Fangman with the Office of the State Appellate Defender, and I represent Mr. Edward Lafontaine. Despite being in his mid-fifties, Mr. Lafontaine was receiving care in a nursing home, where he was arrested for violating his duty to register as a sex offender. At the bench trial, the State was required to prove that Mr. Lafontaine was not confined in that nursing home. Because the State failed to prove beyond a reasonable doubt that Mr. Lafontaine was not confined, the trial court erred when it found Mr. Lafontaine guilty of this offense. In Illinois, under the Sex Offender Registration Act, a sex offender is required to register within a specified period of time at either the local city police department or the sheriff's office. However, if a person is unable to comply with SORA's in-person registration requirements because that person is confined, institutionalized, or in prison, that specific offender does not have to register until three days following the discharge, parole, or release from confinement. Mr. Lafontaine was unable to comply with the duty to register statute in this case because he was confined in a nursing home. Because of that confinement status, he was not required to register until three days after his release or discharge from the nursing home. What was the evidence of his confinement? The evidence of his confinement, Your Honor, is Officer Hindahl's testimony, as well as my client's testimony that he was not free to leave. Officer Hindahl's testimony was a conclusory allegation that Mr. Lafontaine was not confined, which he immediately directly contradicted when he admitted on the record that he did not know why Mr. Lafontaine... I believe, Your Honor, I disagree respectfully, Your Honor, and I believe Mr. Lafontaine felt that he was not free to leave, and so it wasn't a conclusory statement. He truly believed that an alarm would go off by... Oh, yeah, an alarm goes off if you go out the wrong door. An alarm would go off if you exit some public building, so it doesn't mean that you're not free to leave. I understand you're not a trial counsel, but what led him to believe he was not free to leave? Your Honor, in this case, there's a bit in the trial record about my client's mental illness, mental history. So I think that he was in a nursing home in his mid-50s, so that suggests there was something pretty seriously wrong with him, either mentally, physically, or both. And there's also no evidence in the record as to how Mr. Lafontaine got to the nursing home. There's no evidence that says that he got there voluntarily or that he was taken there involuntarily. He would have a lot of the best evidence of that, wouldn't he? He would have, Your Honor. He did proceed pro se at this trial. That's not an excuse for presenting his case. However, it is a factor I think this Court can consider that he was not a trained attorney and obviously had some misconceptions about things. But he certainly did believe that he was confined, and the State went so far as to attempt to prove that he was not confined, but failed to do so. Well, didn't they use Officer Hindall that said in response to this question, was he in any way restricted from leaving that facility at any time? And the officer responded, not that I know of, no. Isn't that sufficient for the trier of fact to find that he was not confined? No, Your Honor, it's not sufficient because Officer Hindall's statement is a conclusory allegation, and immediately after he... Was there an objection? There was no objection. In the absence of an objection, isn't it the proposition of law that the trier of fact can consider that answer for whatever probative value it contains? First, Your Honor, I would suggest that the way that this trial was run was in a rather loose sense. My example for that would be that in the closing argument, the State did offer into evidence the docket entry from the Champaign County case that was dismissed. But regardless, Officer Hindall's testimony was not enough to prove beyond a reasonable doubt that Mr. LaFontaine was confined, because Officer Hindall directly contradicted his own testimony when he testified that he did not know why Mr. LaFontaine was confined. He did not know if he was free to leave, and Officer Hindall did not know if there was a court order. So the State's entire case is resting on Officer Hindall's testimony, and moreover, Officer Hindall, there's no evidence that he had personal knowledge of this issue of confinement. What were the elements that the State had to prove? In this case, Your Honor, the State would have to prove that my client had a duty to register and that he was not confined. That's an affirmative element for them? Yes, it is an affirmative element. It's an element of the offense, Your Honor, because the exception creates the offense in this case. In other words, the exception, Mr. LaFontaine not having to register because he's confined, creates the offense in the case. So that makes it an element of the offense as opposed to an affirmative defense. What about the State? Being a resident of a nursing home does not mean you're confined. So if the State proves he resided there, absent anything else, why isn't that proof that he was not committed there, like by a mental health petition or by some kind of a court order? My client was not, he was charged with a violation of his duty to register. I don't think that that means that the State, if he was a resident of that nursing home, that the State would then not have to prove he was not confined. I think that the confined nature is an element of the offense. We don't think of nursing homes as being facilities where people are confined. And if they are confined, it is simply upon medical advice. And unless they are totally incompetent, if it is medical advice, they're free to leave whenever they want to. The legislature, however, Your Honor, in Section 730 ILCS 150-5-5, that is the statute that instructs the nursing home personnel, hospital personnel, treatment facility personnel to instruct the sex offender to leave. And in that statute, it says upon release from confinement in a hospital or other treatment facility. So I think that that statute itself shows that the legislature intended to include under this definition of confinement or in this institutionalized imprisonment or confinement that nursing homes, hospitals, private institutions would fall under that category, Your Honor. And moreover, the State, the position that Your Honor is pronouncing here is that of the State. The State argues that the statute does not apply to nursing homes and that the statute is limited in its application to persons who are committed or incarcerated. However, the problem with the State's interpretation of the statute is it entirely reads confined out of the statute. And this Court has a duty not to render any terms of the statute superfluous. So if this Court agrees with the State, then the term confined is superfluous to the statute and it has no other meaning. That's not what we believe here. We're standing on the position that confined is a separate definition, a separate term that requires different requirements, for lack of a better word, whereas institutionalized, we commonly think of institutionalized as a mental institution. Or in prison as obviously the Department of Corrections. But confined is that first element. And also I think it's important to point out to the Court that in the statute it goes in order of degrees of commitment. So we start with confined, then we move to institutionalized, and then we move to imprisoned. So I think that the way the legislature wrote the statute was to create an umbrella where the client was, where the defendant is not in prison. And the client was not able to register because of the special status. The purpose of the Sex Offender Registration Act is to protect the public. If Mr. LaFontaine, as a 54-year-old man, was confined in a nursing home, he didn't threaten the public. He was not a threat to the public until, according to SORA, three days after his release. He might have been a threat to the people in the nursing home. Well, that may be true, Your Honor. But in this case, the facts, the evidence that the State adduced at trial is not sufficient to prove the element of the offense that Mr. LaFontaine was not confined. I understand your point about the officer. That's all I know. But he did testify that the defendant was not under lockdown. He was not shackled to his bed. He was not restricted to leaving the facility. And there was no court order that he be at the hospital or at that facility. Your Honor, I do disagree with Your Honor's recitation of the facts. Because the way that I read the record is that he does not know. No, I think he said those things and then admitted. That he did not know. Did he assume them or did he perceive them? And that's a walking back of his testimony. That officer is making a conclusory statement that Mr. LaFontaine is confined and then admitting three relevant facts that show he does not know whether or not Mr. LaFontaine was confined. I'm looking at the statute here. And I just have to tell you I have some skepticism that if the state is charged with establishing that the defendant had not been confined in the period that Mr. LaFontaine was in, that the defendant is at issue. And it appears to be more in the way of an affirmative matter that the defense has to raise and to present evidence on. And that's how the trial court viewed it as well. The trial court deemed it an affirmative defense to be raised by the defendant. Was the trial court in error there? Yes, Your Honor, the trial court was in error. The second district in People v. Rogers spelled out the test for determining whether part of a statute is either an affirmative defense or an element. Whether a statutory clause establishes an essential element of the offense or is an affirmative defense depends on whether the application of the clause establishes the offense or excludes the accused from prosecution. If the statutory clause creates an exception and it is the inapplicability of that exception that creates the offense, then it's an essential element. The exception in this case is that Mr. LaFontaine did not have to register unless he was confined. That inapplicability of that confinement exception is what makes the state's case in this case. This isn't a concession that would damage your argument, but would you agree that in the case of a sex offender given the public policy relating to that, that's probably a poorly written statute in that as a matter of public policy, should the state have to prove as an element of the offense that no exception applies? Again, that doesn't determine the outcome in this case. We sometimes put in drafts or opinions. Legislature, you might want to take a look at this because this is unclear. Is this really a good idea? In Mr. LaFontaine's position, our position would require the state to prove in every case that the sex offender was not confined. I think taking that to its logical extreme could cause a problem. However, the way that the statute is written today, the way the statute that we have before us and the statute that Mr. LaFontaine was convicted of lays it out as an element of the offense. I understand that it does. Wouldn't it make more sense for it to be an affirmative defense? You're right. I'm supposed to register, but... And I show that I fall into the exception. I think it would typically be seen as an affirmative defense, but I don't think in this case... I wasn't trying to get you to admit that it was in this case. I was actually asking about the policy. You know, I don't have enough legislative history understanding of that, so I have a difficult time making a blanket statement of that regard. I'm more comfortable with the facts of my own case, but I appreciate your inquiry, Your Honor. So, the state was required to prove that Mr. LaFontaine was not confined. And they didn't prove enough. And they didn't prove enough, Your Honor. The only witness is Officer Hindall, and his own testimony, he contradicts his own testimony. I could go outside to smoke four or five times a day, but other than that, they didn't want me to leave the building. I don't think that's a fair interpretation of the record before us. There's no indication that Mr. LaFontaine was able to leave the nursing home in any way, shape, or form. Well, he said that he left to smoke four or five times a day, I thought. Maybe I misread that. I don't recall reading that. I'll check my notes during the response, but I don't recall reading that. My client was pretty adamant from the time that he regained his fitness, which was about two weeks before trial, and then he waived his jury the next week. And at that jury waiver hearing is when he made this first exclamation that he was confined and that he did not have to register because of that confined status. The State in this case has failed to prove Mr. LaFontaine guilty beyond a reasonable doubt, and we respectfully request, Your Honors, to reverse the trial court's decision. Thank you. You'll have time in rebuttal. Mr. Majors? May it please the Court, Counsel, the words nursing home don't appear in any of these statutes. This was a problem at trial when the defendant would interchange the word hospital with the words nursing home back and forth and back and forth, and now they're still doing it. The words nursing home don't appear anywhere in the statutes. As to the proof, the charge was that he didn't register within three days of establishing his residence, and Officer Hindall, if I'm pronouncing that right, testified that the defendant stated that that was his residence. And if you look at blacks, residence is different from confinement. Residence is that you have an intent to live there. You're not forced there. You're not confined there. Counsel said there's nothing in the record to explain how he got there. He himself said that he had a medical problem in Springfield, and they sent him down there. And in his words, I'm at Volume 3, Record 183, they placed me down here for habilitation. So that's his explanation as to why he's there. As the Court's already noted, he stated at one point he was allowed to go outside and smoke at will. He told Hindall that was his residence. They cite over and over and over and over to Record 189 claiming that this evidence is in favor of the defense. Here it is. They asked the officer if he was free to come and go. The officer said, quote, he was not confined. They asked the officer if he was restricted from leaving the facility. And the officer's response was, quote, not that I know of, no. Counsel, if there had been an objection to the foundation or hearsay, would it have been sustained? Possibly, but this guy represented himself. There's been no argument in any brief that I've seen that there's a problem with that. And there's no special consideration if he chooses to do that. So if we're here to argue about that, you know, I need some more time to write some more briefs. That wasn't on the schedule. Okay. Not only did the officer testify, but the defendant was allowed to cross-examine him. And during the cross-examination, he kept using the word nursing home, and the officer kept responding nursing home. Nobody ever mentioned prison or confinement or mental institution or treatment facility. The defendant himself continuously asked on cross-examination about the nursing home. When he asked the officer about the alarm going off, he said no. And he said, when you walk out the door, did the alarm go off? And he said no. Did they stop you when you walked me out? No. That's R191. Now, the defendant said at R208, as far as I'm concerned, I was sworn in at the beginning. So it's hard to tell exactly when he's testifying, when he's arguing with the court, when he's trying to cross-examine the officer, when he's making statements, but he himself wants to be considered as under oath at all times, and that is record R208. And while he's testifying at R211, he says, quote, I've done a lot of internal affairs, division, investigation over the years, and it's not unusual for me to go downtown. That's his testimony. Now, I don't know what he means. He said a lot of bizarre things. He said a lot of extreme things. But here, not only is he allowed to go out and smoke, but he's saying that it's not unusual for him to go downtown. That's R211. Was there any evidence that he couldn't make a phone call? I don't recall any evidence like that. Was there any evidence that he couldn't accept visitors? I don't recall any evidence like that. Any evidence that he couldn't correspond through the mail? No, I don't recall any evidence like that. The statute says, the section of the statute that the Council is citing says, any person unable to comply with the registration requirements of this article, because he or she is confined, institutionalized, or imprisoned, shall register in person within three days. It doesn't say that any person confined, institutionalized, or imprisoned shall register within three days. It's saying any person unable to comply with the registration requirements. So is there any evidence that he was unable to comply with the registration requirements, notwithstanding that he was in a nursing home? I don't recall that coming up, no. Okay. That answers the Court's questions. I don't see any other questions. Thank you. Ms. Fenton, rebuttal argument. Thank you, Your Honor. The Council points out that Mr. LaFontaine was sent to the nursing home because he had some sort of medical problem in Springfield. I think that's a key fact that shows that he was confined, that he didn't go to the nursing home voluntarily. He was taken there because of his treatment at another care facility. Your Honor, Harris also asks if my client was restricted from any visitors, from any letters of mail, and things of that nature. These are all things that the State could have proven at the trial court to prove their case beyond a reasonable doubt. You mean they could have called a witness from the nursing home? Yes, Your Honor, they could have. Did that witness testify? Absolutely, they could have. And that witness also might have known whether or not Mr. LaFontaine was confined. But what we have here is we have a trial with one witness who has no personal knowledge of whether or not Mr. LaFontaine was confined. Was he unable to comply with the registration requirements? He was unable to comply with the registration requirements because he was confined in the nursing home. Although he was purportedly able to go smoke cigarettes, that does not mean he could have been smoking the cigarettes on a balcony inside the nursing home. It was in the courtyard. It was in the courtyard, so think. What restrained him from complying with the registration requirements? He was unable to leave the facility to register in person. That is the confinement issue here. Mr. LaFontaine could not. Was that what was required? You're required to register in person, yes, at the city police department or the county sheriff's office. So because of that in-person registration requirement is where this confined issue comes into play. And that's where all of these things that we're talking about, whether Mr. LaFontaine went out and received mail, whether he had phone calls, all of these things, whether or not he was actually confined, could have been proven by a witness that the state just chose not to call. This conviction cannot stand alone on Officer Hindall's testimony that then he directly contradicted. That is not enough proof to show that Mr. LaFontaine violated his duty to register. If this is reversed, what happens? If this is reversed, Your Honor, the conviction? And your client has to register. Yes, Your Honor, my client needs to register, has to register, yes. He's currently still in a nursing home. I know that would be outside of the record. I apologize. No, that's okay. Well, I thought the whole thing was he didn't have to register because he was in a nursing home. That's correct. He wouldn't have to register. I misspoke. Where do you get those cigarettes anyway? I would assume they provide them in the nursing home. That sounds weird. Maybe they don't do that. Whoa, whoa, whoa. They provide it? No, no. That was completely. I'm sorry. I didn't mean to. It's okay. It was a bad question. But you understand that your defendant comes here, your client comes here from Texas. Yes. He uses an alias. Yes. He's hung up on the language of I'm getting hospital care or medical treatment. And he's there in the nursing home under the alias. And somehow he mysteriously gets from Springfield to Mason County. Probably the other people in the nursing home would prefer it that a sex offender is not there at the nursing home with them. So there's a quandary about what do we do in this situation? And of course your point would simply be prosecution, prove your case. That's correct. But it is an unfortunate situation. Yes, it is. If your honors have no further questions, I respectfully request your honors reverse my client's conviction. Thank you. Thank you, Ms. Fangman. Thank you both. The case will be taken under advisement. The written decision shall issue. Court stands in recess.